IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MIA MARIE VECCHIO, | : | No. 2:20-cv-798 |
| Plaintiff, | : | |
| v. | : | |
| MCGUIREWOODS LLP, | : | |
| Defendant. | : | |

## COMPLAINT

Plaintiff Mia Marie Vecchio ("Ms. Vecchio") hereby files this Complaint as follows:

### JURISDICTION AND VENUE

1. Ms. Vecchio exhausted all administrative requirements and dual-filed her administrative charge with the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission.

2. This Court has jurisdiction over this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII"). This Court has supplemental jurisdiction over the state law claim pursuant to the Pennsylvania Human Relations Act, 43 Pa.C.S.A. § 951, *et seq*. ("PHRA"). This Court has jurisdiction over these claims under 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3) and (4), and 28 U.S.C. § 1367.

### PARTIES

3. Ms. Vecchio is an adult individual residing in the Western District of Pennsylvania.

4. Defendant McGuireWoods LLP ("Defendant") is a Virginia limited liability general partnership with a principal place of business at Tower Two-Sixty, 260 Forbes Avenue, Suite 1800, Pittsburgh, PA 15222. At all relevant times, Defendant was acting by and through its

duly authorized administrators, agents and/or employees, who at all relevant times were acting within the course and scope of their employment, and/or in accordance with its policies, customs and practices.

## FACTS

5. Defendant is an international law firm that employs more than 20 employees and has an office location in downtown Pittsburgh, Pennsylvania.

6. Ms. Vecchio was hired by Defendant on November 13, 2017.

7. Ms. Vecchio was formerly employed by Defendant as a paralegal in the "Financial Services Litigation" department and, at all relevant times, her supervisor was Kristopher Issac deVyver ("deVyver").

8. During her employment, Ms. Vecchio always received positive performance reviews and she was never reprimanded or disciplined by Defendant for work performance.

9. On October 11, 2018, Ms. Vecchio was called to a meeting by John Beck ("Beck"), even though Beck was not Ms. Vecchio's supervisor and had no responsibilities with Defendant for meeting and/or communicating with Ms. Vecchio.

10. At the meeting, Beck called Ms. Vecchio into his office, closed the door, and began to discuss Defendant's dress code policy and asked Ms. Vecchio whether she had read it.

11. Beck then began telling Ms. Vecchio that two days prior—on October 9, 2018—Ms. Vecchio had worn leggings that were too tight and in violation of the dress code policy.

12. Ms. Vecchio informed Beck that she was not wearing leggings, that they were in fact dress pants, and that she was wearing the same pants at that time.

13. Ms. Vecchio also informed Beck that she had several pairs of the same pants and that she had worn them at least two days per week since beginning her employment with Defendant nearly a year prior.

14. Ms. Vecchio further informed Beck that most of Defendant's female staff wore the same pants (or at least a similar style pant) to work every day.

15. Beck then told Ms. Vecchio that, even if that were true, he was walking behind her the other day, that he did not like the way the pants looked on her, and that they were too tight for her body.

16. Ms. Vecchio again informed Beck that most of the female staff for Defendant wore the same pants (or at least a similar style pant) to work every day, to which Beck responded that "maybe she should just not be wearing them."

17. After leaving Beck's office, Ms. Vecchio contacted Kate Mitchell ("Mitchell"), a human resources officer for Defendant, and reported the incident.

18. With permission, Ms. Vecchio chose to work from home the following day and, when she returned to work, no one from the "Financial Services Litigation" department would speak to her, including deVyver.

19. Moreover, when Ms. Vecchio returned to work, and after she had complained to human resources about the comments made by Beck, Ms. Vecchio began to receive less work from the "Financial Services Litigation" department and most of her emails went unanswered.

20. On October 15, 2018, Mitchell told Ms. Vecchio that the "situation" with Beck had been resolved and that no further action would be taken nor was it necessary.

21. Later, on October 15, 2018, Ms. Vecchio forwarded an email to Stacy Reyan ("Reyan")—Chief Human Resource Officer for Defendant—that she had previously sent to Mitchell because Mitchell had stopped responding to her.

22. On October 16, 2018, deVyver called Ms. Vecchio and told her that she was being removed from the "Financial Services Litigation" department and would be placed into a different department for Defendant.

23. Ms. Vecchio attempted to seek clarification and an explanation from deVyver, but deVyver was dismissive and quickly hung up the phone.

24. Ms. Vecchio was ultimately moved to the "Mortgages and Portfolio" department, which is notorious among employees for having the worst hours and being the most difficult job and working environment for Defendant.

25. In fact, on October 19, 2018, Shelby Wile ("Wile"), an employee in "Mortgages and Portfolio" and "Financial Services Litigation" departments, told Ms. Vecchio—who Defendant knew was studying to attend law school in addition to working—that if she could not handle her new hours then she should update her resume.

26. Ms. Vecchio was never told what her new position would entail with the "Mortgages and Portfolio" department and Defendant permitted Beck to continue his interactions with Ms. Vecchio.

27. Defendant failed to provide Ms. Vecchio with training appropriate for assuming a new position with which she had never worked.

28. Ms. Vecchio was terminated on November 12, 2018.

29. Ms. Vecchio was never disciplined or reprimanded for any alleged dress code policy violation.

30. Defendant provided Ms. Vecchio with no reason for her termination.

31. Upon termination, Mitchell and Steve Goodworth ("Goodworth") told Ms. Vecchio to leave the office immediately and that her personal belongings would be mailed to her.

32. Defendant then took possession of Ms. Vecchio's phone and removed all information related to it—such as emails and server information—and Mitchell and Goodworth began forcibly removing Ms. Vecchio's personal belongings from her office and threatening her.

33. All the threatening conduct of Mitchell and Goodworth against Ms. Vecchio was done in the open and in full view of other employees for Defendant.

## COUNT I

### Retaliation under Title VII

34. All paragraphs are incorporated herein by reference.

35. Ms. Vecchio engaged in a protected activity by reporting in good faith her concern of sexual harassment and/or sexually disparaging remarks that were made toward her by Beck and she was terminated shortly after her protected conduct took place.

## COUNT II

### Retaliation under the PHRA

36. All paragraphs are incorporated herein by reference.

37. For the reasons described in connection with Count I above, Defendant retaliated against Ms. Vecchio in violation of the PHRA.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Vecchio requests the following relief where applicable:

a. That Defendant be required to compensate her for back pay, front pay and other damages in the form of lost wages, and lost or reduced benefits, with interest until the date of any verdict as to be determined at trial;

b. That Defendant compensate her for all other applicable compensatory damages in an amount to be determined at trial;

c. Punitive damages in an amount to be determined at trial;

d. Attorney's fees and costs; and

e. All other relief this Court deems just and proper.

Respectfully submitted,

THE LAW OFFICES OF TIMOTHY P. O'BRIEN

/s/ Alec B. Wright
Alec B. Wright
Pa. ID No. 316657

Henry W. Oliver Building
535 Smithfield Street, Suite 1025
Pittsburgh, PA 15222
(412) 232-4400
abw@obrienlawpgh.com

*Counsel for Plaintiff*